**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EDWARD DIETRICH,                    )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        2:18-cv-01697-RJC
                                    )
SCHAAF EXCAVATING                   )
CONTRACTORS, INC.                   )
                                    )
                    Defendants.     )

**<u>OPINION</u>**

Robert J. Colville, United States District Judge.

Presently pending before the court is a Motion for Default Judgment against Schaaf

Excavating Contractors, Inc. ("Schaaf" or "Defendant"), by Plaintiff Edward Dietrich.  (ECF

No. 56).  For the reasons that follow, the motion will be granted.

**I.  Procedural History and Factual Allegations**

This action arises out of the demolition of Mr. Dietrich's house, formerly located at 117

Fremont Avenue, in the Mount Oliver Borough, Pennsylvania.   It was initiated with the filing of

a Complaint on December 21, 2018 (ECF No.1) and originally named two defendants, the Mount

Oliver Borough ("the Borough")[1] and Schaaf.  Plaintiff was granted *in forma pauperis* status and

is represented by counsel.  The United States Marshals Service Process Receipt and Return

(Form USM-285) as to Schaaf was returned executed and docketed on August 14, 2019.  (ECF

No. 21).  Schaaf failed to answer or otherwise respond to the complaint in a timely manner and

on September 27, 2019, the Clerk of Court entered default as to defendant Schaaf. (ECF No. 25).

On September 10, 2020, Plaintiff filed the now pending motion for default judgment.   (ECF

---

[1] On October 13, 2020, the court granted a stipulation of dismissal between Plaintiff and the Borough with prejudice. (ECF No. 60).

56).   On October 8, 2020, the court held a hearing on the motion.  (ECF No. 58).  The motion

and all matters pertaining thereto were served upon Schaaf at the address of record. (ECF Nos.

53-2, 54, 56-2, 57-1, 62-1).  The official court calendar also listed the hearing.  Schaaf did not

appear at the hearing. On November 13, 2020, Plaintiff filed Proposed Findings of Fact and

Conclusions of Law.  (ECF No. 62). The matter is now ripe for consideration.

We have jurisdiction pursuant to 28 U.S.C. § 1331 as to the federal claims, and

supplemental jurisdiction as to the state law claims.  28 U.S.C. § 1367.

The original Complaint contained seven counts, and upon the Court's issuance of an

Opinion and Order granting in part and denying in part the Borough's motion to dismiss (ECF

Nos. 31, 32), Plaintiff filed an Amended Complaint, which mirrors the original allegations (as to

Schaaf).  (ECF No. 33).  The allegations in the Complaint are as follows.[2] Plaintiff purchased his

property in the Borough in 1994 and resided there for over a decade prior to his conviction in

2005.  (Compl. ¶ 8, 9).  He was incarcerated from 2005 until June of 2017.  (Compl. ¶ 9).   The

demolition, carried out by Schaaf, occurred in March of 2017, prior to Plaintiff's release from

prison. (Compl. ¶ 22).

As part of Mr. Dietrich's conviction, he was registered as a sex offender, limiting his

possible residences to the property he already owned, or a property within an area permissible by

law. (Compl. ¶10).  While Mr. Dietrich was incarcerated, he fell behind on his property taxes and

was notified of that fact by the Borough via correspondence. (Compl. ¶ 11).  Mr. Dietrich was in

regular communication with the Borough via letters sent to him at the prison from the time he

was notified of his tax debt up until his release. (Compl. ¶ 12).  While in communication with the

---

[2] Generally, courts treat all pleadings and allegations of the plaintiff as true on a motion for default judgment. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

Borough, he was assured that he could pay off his debts after he was released. (Compl. ¶ 13). None of the letters sent to Mr. Dietrich at the prison made any mention of plans to either (a) execute a tax lien on his property, (b) foreclose on his property, or (c) exercise eminent domain to condemn his property and claim it for public use. (Compl. ¶ 14). Plaintiff further alleges the Borough and Schaaf claimed after the demolition that there was a hole in Mr. Dietrich's roof, mold, cracks in the foundation, and that a rear addition had collapsed; Plaintiff alleges that such observations could only have been made after trespassing onto his property. (Compl. ¶ 15, 16).

No public notice was made regarding any condemnation or eminent domain proceedings for the Plaintiff's property. (Compl. ¶ 18).  Plaintiff alleges that he had no opportunity to respond to the Borough's intent to have his property demolished. (Compl. ¶ 19).  He further alleges that even if the demolition was an exercise of the Borough's "police power" due to the "deplorable" condition of the property, many other properties in the area are rundown, but no others have been demolished.  (Compl. ¶ 20, 21).  Plaintiff did not learn about the demolition until after his release from prison. (Compl. ¶ 23).  Plaintiff alleges that because he can no longer live on the property, he has been denied certain Social Security benefits ("SSI") because under the regulations and law pertinent to those benefits, insofar as the property is worth over $2,000 and he currently resides elsewhere,  it is considered an investment property.  (Compl. ¶¶ 25, 26).

As noted *supra*, on October 13, 2020, the Court approved a stipulation of dismissal with prejudice arising out of a settlement between Plaintiff and the Borough, the terms of which are not known.  (ECF No. 60).  The following Counts name Schaaf.[3]  Counts I and II of the

---

[3] The Amended Complaint further alleges deprivation of rights under Article I (Count III) and Article X (Count IV) of the Pennsylvania Constitution.   However, in Plaintiff's Proposed Findings of Fact and Conclusions of law, he concedes that Counts III and IV were properly dismissed as to Schaaf on the grounds that the Pennsylvania

Complaint allege deprivation of constitutional rights under color of law pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiff alleges deprivation of property without due process under the Fifth (Count I) and Fourteenth (Count II) Amendments to the United States Constitution.  In Count VI plaintiff alleges trespass, citing 26 Pa. C.S.A. § 309 (b) and 18 Pa. C.S.A. §3505.  In Count VII plaintiff alleges loss of wages and income as a result of not being able to receive his SSI benefits.[4]

At the hearing on the motion for default judgment, liability having been presumed, the Court heard evidence as to damages. Plaintiff called two witnesses:  1) David Manfredi of Innovative Contracting, a contractor who prepared a written quotation in which he estimates the cost for a replacement residence of modest proportions at $162,352 (Exhibit 4); and 2) Plaintiff Edward Dietrich.

Generally speaking, Mr. Dietrich's testimony corroborated the allegations set forth above.  Mr. Dietrich further explained he owned the house at 117 Fremont Street outright; there were no liens on the property.  As a result of his legal dispute concerning his eligibility to receive SSI (after his release from prison as a result of the property being considered an "investment"), he was deprived of $11,500 in lost benefits. This is the sum not paid to him during a 15 month period of time during which his attorney was contesting the denial of benefits.  Mr. Dietrich also reiterated that he did not receive from either the Borough or Schaaf any notifications of a forthcoming demolition or stated intent to enter the property.

---

Constitution does not allow for private causes of action.  (ECF No. 62 at 8).  Count V does not name Schaaf as a defendant.

[4] The Court assumes at Count VII Plaintiff is alleging lost wages as compensation, rather than a separate cause of action.  Mr. Dietrich argues, "[t]he question of lost wages is one that frequently arises in personal injury suits.  The Courts will calculate past and present earning losses, based on prior work history and circumstances . . . Plaintiff should be reimbursed [sic] his lost income."  (ECF No. 62 at 9); *see also* ECF No. 29 at 22 (admitting no such claim exists under the law).

In addition, the following exhibits were admitted into evidence.   Exhibit 1 is a photograph which shows the house and lot prior to demolition. Exhibit 2 shows the exterior of the house and property, as well as other older, neglected houses on Fremont Street, which have not been demolished.  Exhibit 3 is a picture of an empty grassy lot taken after the demolition, showing where Mr. Dietrich's house had been.  Exhibit 4 is Innovative Contracting's calculations of the costs of rebuilding a replacement house.  Exhibit 5 is a letter from the Borough Manager Rick Hopkinson dated July 31, 2017, written "To whom it may concern" confirming the demolition "earlier this year.  There is no longer a structure on the property." (ECF No. 58-6 at 2).  Mr. Dietrich testified he never received the letter; it is dated after Mr. Dietrich's release from prison.  Exhibit 6 is a letter dated July 28, 2017 from Schaaf's President, Tim Schaaf; it is also dated after Mr. Dietrich's release from prison.  Addressed to Rick Hopkinson, in the letter Mr. Schaaf states:

> As requested the house in question @ 117 Fremont Street, Pittsburgh PA 15210 was in deplorable condition.  The roof was collapsing due to a large hole, a severe crack in the houses [sic] foundation, and mold growing throughout the entire structure, as well as the rear addition was completely separated from the structure and internally collapsed.

(ECF No. 58-7 at 2).

Plaintiff seeks damages as follows: 1) compensatory damages for rebuilding house in an amount of $162,352 as quoted by Innovative Contracting; 2) lost wages (SSI) in an amount of $11,250, as testified to by Plaintiff; 3) punitive damages in an amount of $347,204 (twice the compensatory damages and lost wages); 4) attorney's fees.  Plaintiff further requests court costs accumulated prior to his designation as *in forma pauperis* status, and collection costs.

## II.  Standard of Review

Rule 55(b) of the Federal Rules of Civil Procedure provides for entry of default judgment

against a defendant who has not appeared and who is neither a minor nor an incompetent person. Fed. R. Civ. P. 55(b). When a party has defaulted and all of the procedural requirements for a default judgment are satisfied, the decision to enter default judgment under Rule 55(b)(2) rests in the discretion of the district court. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir.1987). In undertaking this evaluation, the Court must consider: (1) whether the plaintiff will be prejudiced if the default is denied; (2) whether the defendant has a meritorious defense; and (3) whether the defaulting defendant's conduct is excusable or culpable. *See, e.g., Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). When a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided.

"Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D. N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir. 2005)). However, the Court is not required to accept Plaintiffs' conclusions of law and, therefore, "it remains for the [C]ourt to consider whether the unchallenged facts constitute a legitimate cause of action" against the defendant. *Directv, Inc. v. Asher*, 2006 WL 680533, at *1 (D. N.J. Mar. 14, 2006) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58–59, 63 (3d ed. 1998)); *accord Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364; *Comcast Cable Commc'ns v. Bowers*, No. 06-1664, 2007 WL 1557510, at *2 (D. N.J. May 25, 2007).

### III.  Discussion

#### A.  Section 1983 Claims:  Motion for Default Judgment Denied

Plaintiff has brought his federal claims pursuant to 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the Supreme Court concluded in *Monell v. Dept. of Social Services,* 436

U.S. 658, 690 (1978), municipalities are among those "persons" subject to suit via § 1983.

The federal rights invoked by the Plaintiff are based on § 1 of the Fourteenth

Amendment, which provides:

> . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., AMEND. XIV, § 1. The Due Process Clause incorporates the Fifth Amendment's

Takings Clause, making it binding on the States. *Palazzolo v. Rhode Island*, 533 U.S. 606, 611,

121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). Therefore, the Takings Clause claim brought by the

Plaintiff, like the claims based squarely on the Due Process clause, are grounded in the

Fourteenth Amendment.

Count I alleges a claim of violations of the Takings Clause of the Fifth Amendment,

which provides: "... nor shall private property be taken for public use without just

compensation." It applies to the states as well as the federal government. *Chicago, B. & Q.R. Co.

v. Chicago*, 166 U.S. 226, 239, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *Webb's Fabulous

Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980)." *Tahoe-*

*Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 307, n.1, 122 S. Ct. 1465, 1470, 152 L.Ed. 2d 517 (2002); *see also Knick v. Township of Scott*, 588 U.S. ——, 139 S.Ct. 2162, 204 L.Ed.2d 558 (2019). "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 2170. However, "[a] municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property." *In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir.2011). "A property owner is only entitled to recover, however, if the government action 'deprived [him] of all or substantially all of the beneficial use' of the property." *Id.* at 308.

Count II alleges a claim for violations of the Fourteenth Amendment. To establish a § 1983 procedural due process claim, a plaintiff must show "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). Plaintiff must therefore show "that state actors deprived him of property to which he had a legitimate claim of entitlement without the process he deserved." *Gale v. Storti*, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

It is well settled that in order to establish a valid claim pursuant to § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and...show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations omitted). The Third Circuit treats § 1983's "under color of law" provision identically to the Fourteenth Amendment's "state action"

requirement. *Becker v. City Univ. of Seattle*, 723 F.Supp.2d 807, 810 (E.D. Pa. 2010) (citing

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)).

We now turn to the central question of whether Schaaf can be considered a state actor.

Given the procedural posture of this case, we must consider the facts as alleged by Plaintiff to be

true.  Plaintiff alleges Schaaf was acting "under color of state and federal law at all times

relevant to this Complaint." (ECF No. 33 at 2).  The Plaintiff further alleges:

> Schaaf Excavating Contractors, Inc. ("Schaaf") is a demolition company located in
> South Park, Pennsylvania, which specializes in both residential and commercial
> property demolition. Schaaf was responsible for conducting the actual demolition of
> Mr. Dietrich's property, *as a contractor for the Borough*. Schaaf is sued in both its
> individual capacity, as well as in its official capacity as an entity performing the acts
> described in this Complaint *on behalf of the Commonwealth of Pennsylvania, via its
> contract with the Borough*. Schaaf acted under color of state and federal law at all
> times relevant to this Complaint.

(Compl. ¶ 3)(Amended Complaint, ECF No. 33 at ¶ 3) (emphasis added); see also  ¶ 56 ("By

hiring Defendant Schaaf to demolish the Plaintiff's home, *Defendant Borough's direct actions*,

which would be seen as official policy, caused the Plaintiff's injury.") In his Proposed Findings

of Fact and Conclusions of Law, Plaintiff argues that Schaaf  "was hired by the Borough to

perform state actions" and further, it "acted as a state actor when it demolished the property,

knowing that its employer was a governmental agency and that it was to act in accordance with

that knowledge.'  (ECF No. 62 at 3-4).

Plaintiff then argues four separate legal theories under which Schaaf could be considered

a state actor: 1) close nexus test, 2) symbiotic relationship test, 3) joint action test, and/or 4)

because Schaaf performed a public function. First, a private entity may be a state actor where

"such a close nexus between the State and the challenged action that seemingly private behavior

may be fairly treated as that of the State itself." *Kach*, 589 F.3d at 646. This nexus determination

requires a fact-specific inquiry, *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Second, the symbiotic relationship test asks whether the government has "insinuated itself into a position of interdependence" with the defendant." *Id.* "While the exact contours of this state action inquiry are difficult to delineate, the interdependence between the state and private actor must be pronounced before the law will transform the private actor into a state actor." *Groman v. Township of Manalapan*, 47 F.3d 628, 641 (3d Cir.1995). Third, a private party may be a state actor when it is a "willful participant in joint action with the State or its agents." ["joint action test"]; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941, 102 S.Ct. 2744 (1982). Fourth, the public function test arises where the private party has been "delegated ... a power 'traditionally exclusively reserved to the State.'" ["public function test"]; *Terry v. Adams*, 345 U.S. 461, 468–470, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (state action found where private actor administered election of public officials).

In the state action inquiry, "more than one test may be relevant ... the tests may overlap, and one or more prongs of one test may be irreconcilably inconsistent with the prong of another." *Onoufrious Spyros v. Kimball*, 813 F.Supp. 352, 357 (E.D.Pa.1993). The test to be applied depends upon the circumstances of the case and the Supreme Court has counseled lower courts to investigate carefully the facts of each case. *Id.* (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722, 81 S.Ct. 856 (1961).

The case law applicable to this matter and the facts as alleged support denying the motion for default judgment because Schaaf cannot be said to be a state actor. "Acts of...private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.'" *Horton v. USA Envtl. Mgmt., Inc.*, No. 13–3352,

2013 WL 5377284 at *4 (E.D. Pa. Sept. 24, 2013) (quoting *Rendell–Baker v. Kohn*, 457 U.S.

830, 841, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)).

In *Win & Son, Inc. v. City of Philadelphia*, 162 F.Supp.3d 449 (E.D. Pa. 2016), an out of

state warehouse owner brought action against city and government contractors, alleging, *inter*

*alia*, that the city and its contractors violated the warehouse owner's due process rights when

they improperly condemned and demolished  the warehouse, destroying a collection of valuable

art and artifacts stored within the warehouse.  Plaintiff alleged several constitutional claims

pursuant to 42 U.S.C. § 1983, including: violation of procedural due process, violation of

substantive due process, violation of the Fourteenth Amendment of the U.S. Constitution, and

violation of Civil Rights. Defendants, including the contractor USAEM, filed a motion for

summary judgment. After outlining the tests to determine whether a private actor has engaged in

state action, the court noted:

> …[A]lthough only the City had the right to condemn Plaintiffs' property, USAEM
> did not become a state actor simply because it performed the demolition on behalf
> of the City. Under *Groman*, the fact that USAEM performed the work under the
> government's control, did so at the City's request, and received government funds
> does not make it a state actor. The record shows that USAEM was not permitted
> to perform any discretionary government functions. In particular, it did not make
> the decision to declare the building "imminently dangerous" or exercise its
> judgment in determining when it was necessary to demolish the building. Its
> actions were limited to fulfilling the terms of its contract with the government
> subject to the Master Demolition Specifications. *See, e.g., Munoz v. City of Union*
> *City*, 481 Fed. Appx. 754, 761 (3d Cir.2012) (holding that a private demolition
> contractor was not a state actor, despite carrying out the demolition pursuant to a
> contract with the city government). . . . Therefore, Defendant USAEM's Motion
> for Summary Judgment will be granted.

*Id.* at 459.

In *Chompupong v. City Schenectady*, 2019 WL 3321874 (N.D. N.Y. 2019), Plaintiffs

asserted claims for due process and unlawful taking in violation of §1983 and conspiracy to do

so against the City of Schenectady and Jackson Demolition Service, Inc., *inter alia*, arising out

of a demolition of their property, the Nicholaus Building, which had been severely damaged by construction work performed on an adjacent building.  Defendants moved to dismiss. In granting the motion, the Court rejected the "nexus" test, and stated:

> the Court finds that Plaintiffs have failed to plausibly allege that Jackson was acting under color of state law. As the Supreme Court has held, "[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The non-conclusory facts in the Amended Complaint make clear that the City made the decision to demolish the Nicholaus Building and that Jackson was merely the contractor who submitted the lowest bid. The Amended Complaint does not allege that Jackson made the decision to declare the building imminently dangerous or exercise any judgment in determining when it was necessary to demolish the building. Rather, the allegations make clear that its actions were limited to fulfilling the terms of its contract with the government. Such facts do not support the conclusion that Jackson was acting under color of state law. *See Munoz v. City of Union City*, 481 Fed. Appx. 754, 761 (3d Cir. 2012) (holding that a private demolition contractor was not a state actor, despite carrying out the demolition pursuant to a contract with the city government); *Dale E. Frankfurth, D.D.S. v. City of Detroit*, 829 F.2d 38, *5 (6th Cir. 1987) (dismissing the defendant All-Rite Wrecking Company because its demolition of the building at issue while working under contract from the City was not an action taken under color of state law); *Horton v. USA Environmental Mgmt., Inc.*, No. 13-cv-3352, 2013 WL 5377284, *4-*5 (E.D. Pa. Sept. 24, 2013) (holding that private demolition company was not acting under color of state law when it demolished a building under a contract with the government).

2019 WL 3321874 at * 6.

As to Plaintiff's argument that Schaaf was performing a "public function," and thus was a state actor, the requirements of the public function test are "rigorous" and "rarely...satisfied." *Robert S. v. Stetson School, Inc.,* 256 F.3d 159, 165 (3d Cir. 2001) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)). It requires the court to determine whether the defendant was performing a function that is "traditionally and exclusively" the province of the state. *Leshko v. Servis*, 423 F.3d 337, 343 (3d Cir.2005). The court in *Horton v. USA Environmental Mgmt., Inc*. specifically rejected a "public functions test" argument. Under

similar facts, that court found that a plaintiff failed to show the defendant demolition company "was exercising powers that were traditionally the exclusive prerogative of the City of Philadelphia [... when] the City made the decision to demolish the Belmar Property and [the defendant] merely carried out those instructions pursuant to a contract with the City." No. 13-cv-3352, 2013 WL 5377284, *10 (E.D. Pa. Sept. 24, 2013); *see also White v. Cooper*, 55 F. Supp.2d 848 (N.D. Ill. 1999)("Construction work is certainly not a function traditionally restricted to state authorities.")(internal citations omitted).

Our review of the applicable case law leads to the conclusion that Schaaf was not a state actor and therefore, we will exercise our discretion and hold it cannot be held accountable for any alleged constitutional violation(s).  It has not been alleged that Schaaf was permitted to perform any discretionary government functions. In particular, Plaintiff does not contend that Schaaf made the decision to declare the Mr. Dietrich's house dangerous or exercise its judgment in determining when it was necessary to demolish the building. In fact, in his Proposed Findings of Fact and Conclusions of law Mr. Dietrich states "Schaaf knew it was operating under the authority of the Borough.  Schaaf knew its actions were based *on the Borough's decisions* to act against the Plaintiff's property."  (ECF No. 62 at 6) (emphasis added).  The allegations make clear that its actions were limited to fulfilling the terms of its contract with the Borough.  Schaaf cannot be said to have been a state actor and therefore, Plaintiff's §1983 actions cannot stand, and the motion for default judgment will be denied as to Counts I and II.

## B.  Trespass:  Motion for Default Judgment Granted

Count VI alleges trespass, citing violations of 26 Pa. C.S.A. § 309 (b) and 18 Pa. C.S.A. §3505.  Plaintiff alleges that "[n]either the Borough nor Schaaf ever provided notice to Mr. Dietrich that they intended to enter the property for any purposes" and further, he "in fact, did

not learn of the entry onto his property until the Borough send[sic] a letter written by Schaaf with their findings."  (Compl. ¶¶ 81, 82) (Amended Complaint ¶¶ 101, 102).   The Court interprets Count VI to include an action for trespass at common law.

First, Plaintiff cites to the Pennsylvania code regarding criminal trespass, specifically 18 Pa. C.S.A. §3503, alleging the condemnation itself violated that statute as it constituted a trespass for the purposes of damaging the property. (Compl. ¶¶ 84-87) (Amended Complaint  ¶¶ 104-107).  Yet these allegations do not state a claim for trespass;  there is no private cause of action for violations of the criminal code.   Private parties may not prosecute crimes nor raise criminal claims against another party because a private person does not have a "judicially cognizable interest in the prosecution ... of another." *Foster v. Denenberg*, No. Civ. 13-4478, 2014 WL 1370116, at *4 (E.D. Pa. Apr. 8, 2014), *aff'd*, 616 F. App'x 472 (3d Cir. 2015), citing *Linda R.S. v. Richard D*., 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973).

Next, in his  pleadings Plaintiff references the fact that Schaaf violated 26 Pa. C.S.A. § 309(b), the Pennsylvania eminent domain statute, which  plaintiff alleges  "requires that the condemnor – the Borough, in this case – or its employees or agents (Schaaf) must notify the condemnee ten (10) days prior to entering the property for the purpose of making studies, surveys, tests, soundings, or appraisals."  (Compl. ¶ 78) (Amended Complaint ¶ 98).  We note the Pennsylvania eminent domain code[5] vests exclusive jurisdiction over condemnation

---

[5] To the extent Plaintiff relies on this code as a cause of action, ordinarily a plaintiff must institute an action in the Court of Common Pleas of Allegheny County by filing a petition for appointment of viewers pursuant to 26 Pa. C.S.A. §502.  The viewers are empowered to award, as a component of damages, money to compensate plaintiff for items of special damages authorized by the Eminent Domain Code, including damages related to violations of §309(b) for unlawful trespass. Plaintiff does not appear to be asking this Court to implement such a procedure, and instead, in his prayer for relief, seeks money damages rather than the appointment of viewers.  He now seeks compensation through the entry of default judgment based on the evidence presented during the hearing on the motion.

proceedings for compensation in Court of Common Pleas in the county where the land in question is located. *Baranowski v. Borough of Palmyra*, 868 F. Supp. 86 (M.D. Pa.1994).

Regardless, we presume Plaintiff cites to this code as further support for his action in trespass at common law, having not been notified of an illegal entry on to his property. The motion for default judgment will be granted as to the trespass claim. Pennsylvania law defines trespass as "an unprivileged, intentional intrusion upon land in possession of another." *Graham Oil Co. v. BP Oil Co*., 885 F.Supp. 716, 725 (W.D. Pa.1994) (citing *Kopka v. Bell Tel. Co*., 371 Pa. 444, 91 A.2d 232, 235 (1952). Trespass is an intentional tort, which means that in order for liability to attach, a defendant must have the "intention to enter upon the particular piece of land." *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc*., 385 Pa. 477, 123 A.2d 888, 891 (1956) (quoting Restatement (Second) of Torts, § 163, comment b). Under Pennsylvania law, as under the general rule, a trespasser is responsible in damages for all injurious consequences which are the natural and proximate result of his conduct. *Boring v. Google, Inc*., 598 F.Supp.2d 695, 702 (W.D. Pa. 2009), citing *N.E. Women's Ctr., Inc. v. McMonagle,* 689 F. Supp. 465, 477 (E.D. Pa.1988) and 75 Am. Jur.2d, Trespass, § 52. Under the facts as alleged, Schaaf trespassed onto Plaintiff's property when it intentionally entered Plaintiff's property and was not privileged to do so.

As noted supra, in deciding whether to grant a motion for default judgment, the Court must consider the *Emasco* factors: (1) whether the defaulting party has a meritorious defense; (2) whether Plaintiff will suffer prejudice if default is denied; and (3) whether the defaulting party is culpable in bringing about default. *Chamberlain*, 210 F.3d at 164; *Emasco*, 834 F.2d at 74.

### i. Meritorious Defense

The showing of a meritorious defense is accomplished when "allegations of defendant's answer, if established on at trial, would constitute a complete defense to the action." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir. 1984). If the defendant does not respond, the Court cannot determine whether the defendant has any meritorious defenses, and the factor points in favor of granting default judgment against the defendant. *Teamsters Health & Welfare Fund of Philadelphia v. Dubin Paper Co*., No. 11-7137, 2012 WL 3018062, at *4 (D. N.J. July 24, 2012). Here, Defendant has failed to appear, answer or defend itself.  Thus, this factor points towards granting Plaintiff's motion for default judgment against Schaaf.

### ii. Prejudice to Plaintiff

Prejudice occurs when "a plaintiff has no other means to vindicate rights and recover damages." *Trs. of the BAC Local 4 Pension Fund v. Danaos Group LLC*, No. 18-15551, 2019 WL 3453270, at *2 (D. N.J. July 31, 2019). If a plaintiff is unable to prosecute its case, engage in discovery, or obtain a final outcome on its claims—whatever that outcome might be—it will face prejudice in being denied default judgment. *Id.* Here, Schaaf has failed to appear or answer, and Plaintiff would therefore suffer prejudice if he does not receive default judgment, having no other means of vindicating his claim and recovering damages for trespass.  This factor points towards granting Plaintiff's motion for default judgment against Defendant Schaaf.

### iii. Defendant's Culpability

Culpable conduct is conduct that displays "willfulness" or "bad faith" and amounts to "more than mere negligence." *Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 142 (3d Cir. 2017). Culpable conduct can be shown by a "reckless disregard for repeated communications from plaintiffs and the court." *Nationwide Mut. Ins. Co. v. Starlight Ballroom*

*Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006). In fact, if a defendant fails to answer, move, or otherwise respond to an action, culpability will be presumed. *See Teamsters Health*, 2012 WL 3018062, at *4 (holding defendant's failure to answer demonstrated a presumption of culpability). Here, the Court will presume culpability on part of Schaaf because it has failed to respond, answer, or involve itself in this case in any way and it has done nothing to overcome this presumption. At no point during this action has it answered any filing.

In conclusion, the *Emasco* factors support granting Plaintiff's motion for default judgment against Schaaf.

### C. Damages

After a Court determines that judgment by default should be entered as to liability, the court must address the quantum of damages or other recovery to be awarded. The Court may determine the amount of damages by conducting a hearing or upon submission of affidavits. Fed. R. Civ. P. 55(b)(2); *Jonestown Bank and Trust Co. v. Automated Teller Mach., Services, Inc*., 2012 WL 6043624, *4 (M.D. Pa. 2012).

In Pennsylvania, a "trespasser becomes liable not only for personal injuries resulting directly and proximately from the trespass but also for those which are indirect and consequential." *Kopka v. Bell Tel. Co*., 371 Pa. 444, 91 A.2d 232, 235–36 (1952). In *Kirkbride v. Lisbon Contractors, Inc.*, 560 A.2d 809 (Pa. Super.1989) property owners brought a trespass action against contractor hired by municipal authority to construct sewer and bike path along property line.  The Court found that the proper measure of damages was cost of repair, and further, the jury could determine the costs attributable to the repair.  *Id.* at 814.  The evidence of record here substantiated the cost for rebuilding Plaintiff's house, and such cost is valued at $162,352.  Schaaf, as trespasser, having entered the property and demolished the house is

responsible for such damages because they are the natural and proximate result of its conduct. As to Plaintiff's claim for compensatory damages due to lost wages (SSI) in an amount of $11,250, the Court finds that such damages are indirect and consequential, and accordingly, will award said amount to Mr. Dietrich.   Accordingly, the Court finds that Plaintiff is entitled to compensatory damages in these amounts.

Next, we turn to Plaintiff's claim for punitive damages.  *Id.* (approving punitive damage award based on a trespass to land where conduct of municipality's hired contractor was recklessly indifferent to the property owner's rights).  As a general proposition, punitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they clearly are not liquidated or computable. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1152 (3d Cir. 1990); *See, also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir.1974).  As noted above, no representatives from Schaaf appeared at the hearing to offer any evidence in contravention of Plaintiff's claim for punitive damages.

Punitive damages are available under Pennsylvania law for "torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured." *G.J.D. v. Johnson*, 713 A.2d 1127, 1129 (Pa. 1998) (quoting *Thompson v. Swank*, 176 A.2d 211, 211 (Pa. 1934)). The Supreme Court of Pennsylvania has noted that "the purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others from similar conduct." *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989).

The "size of a punitive damages award must be reasonably related to the State's interest in punishing and deterring the particular behavior of the defendant and not the product of arbitrariness or unfettered discretion." *Hollock v. Erie Ins. Exchange*, 842 A.2d 409, 419 (Pa.

Super. 2004) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1241 (Pa. Super. 1998)). Punitive

damages must be "both proportionate to the amount of harm to the plaintiff and to the general

damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003). In

discussing the amount of punitive damages, the *Campbell* court noted that "[s]ingle-digit

multipliers" were ordinarily reasonable, but greater ratios have been upheld where "a particularly

egregious act has resulted in only a small amount of economic damages[.]" *Id.* at 425.

Pennsylvania courts consider three factors when awarding punitive damages: "(1) the character

of the act; (2) the nature and extent of the harm; and (3) the wealth of the defendant." *Hollock*,

842 A.2d 409, 419 (quoting *Pioneer Comm. Funding Corp. v. Fin. Mortg. Corp.*, 797 A.2d 269,

290 (Pa. Super. 2002)).

### 1. Character of the Act

The Supreme Court has stated that "the most important indicium of the reasonableness of

a punitive damages award is the degree of reprehensibility of the defendant's conduct."

*Campbell,* 538 U.S. at 419 (quoting *BMW v. Gore*, 517 U.S. 559, 575 (1996)). Here, Plaintiff has

established that Schaaf entered his property without his permission and demolished his home.

However, it must also be noted that Plaintiff admits this occurred pursuant to Schaaf's contract

with the Borough and as a result of the Borough's directive.   This mitigates against a large

punitive damages award.

### 2. Nature and Extent of Harm

The second factor that a court must consider is the nature and extent of the harm. Here,

Plaintiff lost the value of his home and has been displaced since the time he was released from

prison.  This factor weighs in favor of a punitive damages award.

3. Wealth of Defendant

Finally, the court is to consider the defendant's wealth when awarding punitive damages. Here, Plaintiff estimates, based upon Dun & Bradstreet reporting, that Schaaf's annual revenue was $656,100 in 2020. Therefore, Plaintiff's request for punitive damages is within Schaaf's means.

Based on these factors, this Court finds that a modest award of punitive damages is appropriate. Pennsylvania courts have found that "evidence of wealth is not mandatory to establish a claim for punitive damages" and "the polestar for the [factfinder's] assessment of punitive damages is the outrageous conduct of the defendants, not evidence of a defendant's wealth." *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 215 (Pa. Super. 2003) (citing *Shiner v. Moriarty*, 706 A.2d 1228, 1241-42 (Pa. Super. 1998)). Accordingly, this Court concludes that a punitive award of $1,000 is sufficient to meet the goals of punishing Schaaf and deterring it and others from similar conduct in the future. Based on the facts alleged and deemed true, there is no question that Schaaf trespassed upon the property.  It is also true that Schaaf has never denied liability. The allegations in the operative complaint demonstrate that Schaaf was at least negligent in its actions.  However, based upon the facts as alleged, given the contract with the Borough and the fact that the demolition occurred as a result of the Borough's decision, Schaaf's behavior was not so outrageous as to warrant an award equal to or a multiplier of Plaintiff's compensatory damages.  Thus, a modest punitive damages award is appropriate.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is granted, and the following damages are awarded: compensatory damages for rebuilding house in an amount of $162,352; 2) lost wages (SSI) in an amount of $11,250;  and 3) punitive damages in an amount

of $1,000.  Plaintiff's counsel will be ordered to submit a fee petition/affidavit setting forth

evidence and authority supporting fees claimed, as well as any award of costs accumulated prior

to his designation as in forma pauperis status. An Order consistent with this Opinion follows.


Dated:  March 3, 2021

                                        /s/ *Robert J. Colville*
                                        Robert J. Colville
                                        United States District Judge

cc:      Record counsel via CM-ECF

         Schaaf Excavating Contractors, Inc.
         1800 Triphammer Rd.
         South Park, PA 15129